# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs September 25, 2002

## STATE OF TENNESSEE v. TAMMY B. DAVENPORT

**Direct Appeal from the Criminal Court for Cumberland County**
**Nos. 5731, 6038     Leon C. Burns, Jr., Judge**

---

**No. E2001-02980-CCA-R3-CD**
**January 21, 2003**

---

The defendant pled guilty to six counts of forgery over $1000, a Class D felony, and four counts of forgery, a Class E felony, with the sentences to be set by the trial court. At the conclusion of the sentencing hearing, the trial court sentenced the defendant as a Range I, standard offender to the maximum terms of four years for each forgery over $1000 conviction and two years for each forgery conviction, with the sentences to be served concurrently in the Department of Correction. The trial court denied the defendant's request for full probation or split confinement. The defendant appeals, arguing that the trial court erred by failing to place its findings on the record and by denying probation or a sentence of split confinement. Based on our review, we affirm the sentences imposed by the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID H. WELLES, J., joined. JOSEPH M. TIPTON, J., concurred in results only.

John Philip Parsons, Cookeville, Tennessee, for the appellant, Tammy B. Davenport.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William Edward Gibson, District Attorney General; and Anthony J. Craighead, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

On September 4, 2001, the defendant, Tammy B. Davenport, pled guilty in the Cumberland County Criminal Court to six counts of forgery over $1000 and four counts of forgery. However, the transcript of the guilty plea hearing is not included in the record before this court. The transcript of the guilty plea hearing is normally necessary in order for this court to conduct an effective review of sentencing in a case involving a conviction pursuant to a guilty plea. See State v. Thomas Leon

Lewis, II, No. W2000-01740-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 344, at *3 (Tenn. Crim. App. May 9, 2001) (citing State v. Keen, 996 S.W.2d 842, 844 (Tenn. Crim. App. 1999)). Nonetheless, we will review the trial court's sentencing determinations, relying on the presentence report and the transcript of the sentencing hearing for the details surrounding the offenses.

The presentence report contains the following "Official Version" of the crimes:

> The defendant, Tammy Berneice Davenport, was indicted on January 26, 2000 and November 13, 2000 by the Cumberland County Grand Jury for the offenses of forgery and passing forged instruments. There are a total of 32 counts in these indictments, involving two (2) victims in these cases. Cumberland County Cases 5731 and 6038.
>
> The defendant had numerous court dates and had trial dates that she would fail to appear. She was incarcerated, and then escaped from custody by leaving the mental health facility she was taken to. The Court ordered her to be held without bond awaiting sentencing.
>
> On September 4, 2001, the defendant agreed to plead guilty to case no's 5731 and 6038. She agreed to be sentenced by the Court, and a sentencing hearing is scheduled for October 31, 2001.

Mark Ledbetter, the Department of Probation and Parole officer who prepared the defendant's presentence report, testified at the October 31, 2001, sentencing hearing that the defendant had five prior convictions for driving on a revoked or suspended license and two prior misdemeanor theft convictions. He said that the defendant was pregnant and due to deliver in about three months. She had been in custody since entering her guilty pleas, and he had heard that she had had "some complications" with her pregnancy while in custody. He testified the defendant made a statement for the presentence report expressing regret for the offenses and attributing her actions to her drug addiction.

Ledbetter acknowledged the defendant's crimes did not involve violence and that, while not on an "actual probation," she had successfully completed "11-29 PSI probation" for one of her theft cases, which had included forty hours of community service. He believed that the defendant would be employable after the birth of her child.

The defendant testified she had a serious addiction to methamphetamine, which was the main reason she had committed the instant offenses. If granted probation or community corrections, she intended to try to enter a drug rehabilitation program before her baby was born and then try to regain custody of her eight-year-old daughter and one-year-old son, who had been removed from her custody about a year previously because of her drug addiction. She said she had been studying for her GED, had completed twenty hours of a parenting course during the approximately four and one-half months she had been in jail, and was currently drug-free. She believed she would be able to

successfully complete a drug rehabilitation program and obtain a job after the birth of her baby. If she were to be released from jail, the defendant's desire was to live with her fiancé. However, if that was not possible, she thought she would be able to stay with her mother. The defendant expressed her willingness to comply with any terms of her release, testifying, "I'd like to see for me to go home. And I'd be willing to be on house arrest, the ankle bracelet, whatever it takes, so I can get my kids back with me, where they belong, and get myself some help so I could stay straight."

The defendant acknowledged having failed to appear in court on at least two or three occasions when her cases were set for trial. She explained that she just "couldn't give the dope up, to turn [herself] in," and conceded that "[i]t took going to jail" in order to stop her drug use. She later claimed, however, that she had been drug-free for a month and a half prior to being incarcerated. She acknowledged that her fiancé was currently under indictment for manufacturing methamphetamine and that her mother was a convicted felon currently on probation. The defendant further acknowledged that her brother, who lived with her mother, was also a convicted felon on probation and implied that he also had a drug addiction.

The defendant's mother, Wanda Bernice Bohannon, testified that she had been "busted for cocaine four years ago." She said she had never violated any of the terms of her probation, had passed all of her drug screens, and would try to help the defendant get into drug treatment.

In sentencing the defendant, the trial court made the following findings of fact:

> Well, [the defendant's] history in court has not been good, and she's failed to appear two or three times, maybe more than that. She does have extensive, or I don't want to use the word in the context used here in 40-35-115, but she does have a lot of prior convictions, misdemeanors, thefts, a couple of thefts, and driving on revokes. She doesn't have offenses of failure to appear, but she does have some contempt citations for failure to appea[r] in court on more than one occasion. A long history of substance abuse. Clean now only because she's in jail, I would say. I'm not -- she says a month before she came into custody, but I don't know. I don't -- I just don't see that she fits in the category of some sort of split confinement. I think the prior convictions and her, although not cited, but unwillingness to comply enhancement, I think would apply here because of her failure to appear in court, as opposed to maybe just being on bond pending appeal and not seeing the probation officer.

> So, I think those enhancements and no mitigators, that I'm aware have of that have been offered, would justify a maximum sentence of four years for the "D" felonies and two years for the "E's." I don't think the circumstances would justify of finding that her criminal activity was extensive in this case. Maybe there's some others that

might be -- may apply, but a four-year sentence. And I do think it would be destined to failure and think that the sentence should be served in the Department of Corrections [sic]. I deny any request for split confinement.

Finding no evidence to support consecutive sentencing, the trial court ordered that the sentences run concurrently, for an effective sentence of four years. Thereafter, the defendant filed a timely appeal to this court.

## ANALYSIS

### Sentencing

The defendant contends that the trial court erred by failing to make adequate findings of fact in support of its sentencing determinations and in denying her request for probation or other alternative sentencing. When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a *de* novo review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103 and -210; State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App. 1987).

The party challenging the sentences imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169. In this case, the defendant has the burden of illustrating the sentence imposed by the trial court is erroneous. Because we agree with the defendant that the trial court's findings of fact were inadequate, we review the defendant's sentences *de novo*, with no presumption of correctness given to the trial court's sentencing determinations.

The defendant contends that the trial court erred by misapplying the enhancement factor of "unwillingness to comply" based on her failure to appear in court, and that the record does not support a finding that confinement is warranted in her case. She points out that she is presumed to be a favorable candidate for alternative sentencing, and argues that her prior criminal history is not extensive and there is no evidence that confinement is necessary to avoid depreciating the seriousness of her offenses or that measures less restrictive than confinement have either frequently or recently been unsuccessfully applied to her. The State responds that the facts and circumstances of the defendant's case fully support the trial court's denial of a sentence of full probation or split confinement. In support, the State cites, *inter alia*, the defendant's history of drug use and drug addiction, lengthy criminal history, and failure to appear in court, as well as the criminal background and drug history of the individuals with whom the defendant intends to associate if released from confinement.

As a Range I, standard offender, the defendant was subject to sentences ranging from two to four years for her Class D felony convictions, and from one to two years for her Class E felony convictions. See Tenn. Code Ann. § 40-35-112(a)(4)-(5) (1997). The presumptive sentence for a Class D or E felony is the minimum sentence in the range if there are no enhancement or mitigating factors. Id. § 40-35-210(c). Procedurally, the trial court is to enhance the sentence within the range based on any applicable enhancement factors, and then reduce the sentence within the range as appropriate based on any mitigating factors. Id. § 40-35-210(e). The weight to be afforded an enhancement or a mitigating factor is left to the trial court's discretion as long as the trial court complies with the purposes and principles of the 1989 Sentencing Act, and its findings are adequately supported by the record. Id. § 40-35-210, Sentencing Commission Comments; State v. Moss, 727 S.W.2d 229, 236 (Tenn. 1986).

The trial court apparently enhanced the defendant's sentences to the maximum in the range, based on its finding that there were no applicable mitigating factors and that the following two enhancement factors applied:

> (1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;
>
> . . . .
>
> (8) The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community[.]

Tenn. Code Ann. § 40-35-114(1), (8) (Supp. 2001). We agree with the trial court that enhancement factor (1) is applicable based on the defendant's substantial criminal history, which consists of five convictions for driving on a suspended, cancelled, or revoked license and two convictions for theft of $500 or less. Moreover, although these convictions are all misdemeanors, we conclude that the

number of prior convictions justifies weighing enhancement factor (1) heavily. The defendant's presentence report also reveals that she was twice committed as a juvenile to the Tennessee Department of Youth Development for violation of intensive probation. Therefore, enhancement factor (8) applies. See State v. Jackson, 60 S.W.3d 738, 743-44 (Tenn. 2001) (stating that juvenile probation violations may be considered when determining the applicability of enhancement factor (8)).

Defense counsel did not propose any mitigating factors at sentencing, although he did point out in arguing for full probation that the defendant's offenses did not involve violence. However, while the defendant's actions may have neither caused nor threatened serious bodily injury, see Tenn. Code Ann. § 40-35-113(1), we conclude this mitigating factor is entitled to very little, if any, weight. In our view, the two applicable enhancement factors, including the heavy weight carried by enhancement factor (1), and the lack of any substantial factors in mitigation, justify the maximum sentences imposed.

The defendant also argues that the trial court erred in denying full probation or a period of split confinement. An especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6) (1997). However, if the court is presented with "evidence sufficient to overcome the presumption, then it may sentence the defendant to confinement according to the statutory provision." Ashby, 823 S.W.2d at 169. The presumption in favor of alternative sentencing may be overcome by facts contained in the presentence report, evidence presented by the State, the testimony of the accused or a defense witness, or any other source, provided it is made part of the record. State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996).

Tennessee Code Annotated section 40-35-303(a) provides that a defendant is eligible for probation, subject to certain exceptions, if the sentence imposed upon the defendant is eight years or less. Tenn. Code Ann. § 40-35-303(a) (1997). Even if eligible, however, the defendant is not automatically entitled to probation as a matter of law. See id. § 40-35-303(b). The burden is upon the defendant to show that she is a suitable candidate for probation. State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996); see Tenn. Code Ann. § 40-35-303(b) (1997). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

There is no bright line rule for determining when a defendant should be granted probation. Bingham, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis. Id. Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. Goode, 956 S.W.2d at 527.

The record supports the trial court's denial of probation. The twenty-seven-year-old defendant has a fairly lengthy adult criminal record, beginning with a theft committed at the age of 18. She is seriously addicted to methamphetamine. By her own testimony, her drug addiction caused her to lose custody of her two children, commit the instant offenses, and fail to appear in court on at least two occasions in connection with the charges in the instant case. In spite of that, the defendant proposes that she live with her fiancé, who has been indicted for manufacturing the very drug to which she is addicted. Barring that, she proposes that she live with her mother and brother, both of whom are convicted felons on probation with apparent drug addictions themselves.

The trial court found the defendant's claim that she had been drug-free for a month and a half prior to entering jail unbelievable, and concluded that her rehabilitation efforts would be "destined to failure" if she were released on probation, given the environment she intended to enter and the individuals with whom she intended to associate. We agree. Although the defendant acknowledged that it took going to jail to stop her drug use and, if released on probation, she would be surrounded by temptation to use drugs, she offered no specific plans for overcoming her addiction, other than her vague intention "to – try and go into a rehab before" she had her baby.[1] Under these circumstances, we conclude that the trial court did not err in denying the defendant's request for full probation.

We also conclude that the trial court did not err in denying split confinement or some other alternative sentencing in this case. A sentence of confinement may be based on any one of the following considerations: "[c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct," "[c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses," or "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant." Tenn. Code Ann. § 40-35-103(1)(A)-(C) (1997); see Ashby, 823 S.W.2d at 169. The defendant argues that there is no evidence that measures less restrictive than confinement have frequently or recently been applied unsuccessfully in her case. We disagree. The defendant's criminal record includes seven misdemeanor convictions as an adult for which she received an assortment of suspended sentences, unsupervised and supervised probation, and community service. She apparently also has an extensive juvenile criminal record. The prior punishments the defendant has received involving measures less restrictive than confinement have obviously not been sufficient to stop her criminal activities, as evidenced by her charges in the instant case. Given this, in addition to the fact that both of her proposed living arrangements place her with persons who, like her, have apparent drug addictions, we conclude that the trial court did not err in denying probation.

---

[1] We note that defense counsel informed the trial court that he had a list of "some places" the defendant could "get into" for drug treatment if released on probation. However, no specific place or treatment plan was proposed.

## CONCLUSION

Based on our review, we conclude that the trial court did not err in enhancing the defendant's sentences to the maximum in her range or in denying full probation or split confinement. Accordingly, we affirm the judgment of the trial court concerning both the length and manner of service of the defendant's sentences.

_____
ALAN E. GLENN, JUDGE